**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LANGSAM HEALTH SERVICES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 19-cv-01696-LPS |
| GARDEN MANOR REHAB AND NURSING OF SOUTHWEST, LLC d/b/a EMERALD CARE CENTER SOUTHWEST, LLC; GARDEN MANOR REHAB AND NURSING OF TULSA, LLC d/b/a EMERALD CARE CENTER TULSA; GARDEN MANOR REHAB AND NURSING OF MIDWEST CITY, LLC d/b/a EMERALD CARE CENTER MIDWEST CITY, LLC, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**AMENDED ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS**

Defendants, Garden Manor Rehab and Nursing of Southwest, LLC d/b/a Emerald Care Center Southwest, LLC ("Southwest Facility"); Garden Manor Rehab and Nursing of Tulsa, LLC d/b/a Emerald Care Center Tulsa ("Tulsa Facility"); and Garden Rehab and Nursing of Midwest City, LLC d/b/a Emerald Care Center Midwest (Midwest Facility)(Southwest Facility, Tulsa Facility, and Midwest Facility are collectively referred to herein as "Defendants"), by and through their attorney, The Law Office of James Tobia LLC, for its answer to Plaintiff's Complaint, states as follows:

## INTRODUCTION

1.      This is an action seeking damages for account stated, breach of contract, unjust

enrichment and for violations of the Delaware Commercial Code based on Defendants' failure to

remit timely payment to Langsam Health Services, LLC, d/b/a both Omnicare of Oklahoma City

and Omnicare of Tulsa ("Omnicare"), premised on contracts in which each Defendant agreed to

pay Omnicare for the provision of pharmaceutical goods and services

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 1 of

Plaintiff's Complaint.

2.      Omnicare is an institutional pharmacy that provides such goods and services to

long-term care institutions and skilled nursing facilities, including assisted living centers.

Omnicare provided such goods and services to each Defendant in connection with its

facility(ies).

**ANSWER:**     Defendants admit to a business relationship with Omnicare. To the extent

that a response is further required, Defendants lack sufficient knowledge or information from

which to admit or deny the allegations contained in Paragraph 2 of Plaintiff's Complaint.

3.      Through this action, Omnicare seeks an award of damages that is at least equal to

the amount owed to it for the products supplied and services rendered to Defendants.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 3 of

Plaintiff's Complaint.

## THE PARTIES

4.      Omnicare is a limited liability company, the sole member of which is

NieghborCare Pharmacy Services, Inc. ("NeighborCare"). NeighborCare is incorporated under

the laws of the State of Delaware and maintains its principal place of business in the State of Ohio.

      **ANSWER:**    Defendants are without sufficient knowledge with which to form a belief as to the truth of the allegations contained in Paragraph 4 of Plaintiff's Complaint and therefore denies the same and demands strict proof thereof.

      5.    Defendant Garden Manor Rehab and Nursing of Southwest, LLC d/b/a Emerald Care Center Southwest, LLC ("the Southwest Facility") is an Oklahoma limited liability company located at 5600 S. Walker Avenue, Oklahoma City, OK 73109. Upon information and belief, the members of the Midwest Facility are citizens of either Oklahoma or New York, and none are citizens of either Delaware or Ohio.

      **ANSWER:**    Defendants admit the Southwest Facility is a limited liability company located in Oklahoma and further answering, Defendants object to the allegations contained in Paragraph 5 of Plaintiff's Complaint to the extent they are conclusions of law.

      6.    Defendant Garden Manor Rehab and Nursing of Tulsa, LLC d/b/a Emerald Care Center Tulsa ("the Tulsa Facility") is an Oklahoma limited liability company located at 2425 S. Memorial Drive, Tulsa, OK 74129. Upon information and belief, the members of the Midwest Facility are citizens of either Oklahoma or New York, and none are citizens of either Delaware of Ohio.

      **ANSWER:**    Defendants admit the Tulsa Facility is a limited liability company located in Oklahoma and further answering, Defendants object to the allegations contained in Paragraph 6 of Plaintiff's Complaint to the extent they are conclusions of law.

      7.    Defendant Garden Manor Rehab and Nursing of Midwest City, LLC d/b/a Emerald Care Center Midwest ("the Midwest Facility") is an Oklahoma limited liability

company located at 2900 Parklawn Drive, Midwest City, OK 73110. Upon information and belief, the members of the Midwest Facility are citizens of either Oklahoma or New York, and none are citizens of either Delaware or Ohio.

**ANSWER:**   Defendants admit the Midwest Facility is a limited liability company located in Oklahoma and further answering, Defendants object to the allegations contained in Paragraph 7 of Plaintiff's Complaint to the extent they are conclusions of law.

8.      Below, the Southwest Facility, Tulsa Facility, and Midwest Facility are referred to collectively as the "Emerald Facilities."

**ANSWER:**   Paragraph 8 of Plaintiff's Complaint speaks for itself and requires no answer from these Defendants.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction under 28 U.S.C. §1332 because the parties are completely diverse and the matter in controversy exceeds $75,000.

**ANSWER:**   Defendants admit the allegations made in Paragraph 9 of Plaintiff's Complaint.

10.      This Court has personal jurisdiction over the parties because each Facility Defendant irrevocably submitted to the jurisdiction of this Court in the contracts at issue, which are described below. Moreover, in those contracts, the parties each explicitly waived the right to assert lack of jurisdiction as a defense to any dispute or controversy arising from those contracts.

**ANSWER:**   Defendants admit the allegations made in Paragraph 10 of Plaintiff's Complaint.

11.      Venue is proper here because the parties each stipulated and agreed in the contracts at issue that the state and federal courts of the State of Delaware have jurisdiction over

any dispute or controversy arising from those contracts, to the exclusion of any and all other possible venues. They further agreed that their respective rights and obligations would be governed by Delaware law, and explicitly agreed to waive all challenges to improper venue and forum non conveniens.

**ANSWER:**   Defendants admit the allegations made in Paragraph 11 of Plaintiff's Complaint.

## FACTS

12.   Omnicare is in the business of providing pharmaceutical goods and related services to long-term care facilities and skilled nursing facilities, including nursing homes.

**ANSWER:**   Defendants are without sufficient knowledge with which to form a belief as to the truth of the allegations contained in Paragraph 12 of Plaintiff's Complaint and therefore denies the same and demands strict proof thereof.

13.   Omnicare is qualified, licensed, and capable of providing (and does in fact provide) prescription and nonprescription pharmaceutical products, parenteral nutritional supplies, and intravenous supplies ("Pharmacy Products), and related services ("Pharmacy Services").

**ANSWER:**   Defendants are without sufficient knowledge with which to form a belief as to the truth of the allegations contained in Paragraph 13 of Plaintiff's Complaint and therefore denies the same and demands strict proof thereof.

14.   Omnicare also provides pharmacy consultant services ("Consultant Services").

**ANSWER:**   Defendants are without sufficient knowledge with which to form a belief as to the truth of the allegations contained in Paragraph 14 of Plaintiff's Complaint and therefore denies the same and demands strict proof thereof.

15.     The Emerald Facilities are nursing and rehabilitation facilities, all of which are affiliates of a non-party entity, Emerald Health Care.

**ANSWER:**     Defendants object to the allegations contained in Paragraph 15 of Plaintiff's Complaint to the extent they contain conclusions of law.

16.     On or about August 1, 2017, each of the Emerald Facilities entered into its own contracts with Omnicare, pursuant to which Omnicare agreed to provide, and the Emerald Facilities agreed to pay for, Pharmacy Products, Pharmacy Services, and Consultant Services: the Pharmacy Products and Services Agreement (the "PSA") and the Pharmacy Consultant Agreement (the "PCA")(each a "Contract" and, collectively, the "Contracts").[1] Each of the Contracts had an initial two-year term and automatically renewed for two-year terms absent termination.

**ANSWER:**     Defendants object to that Omnicare had a business relationship with Defendants. Further answering, Plaintiff denies the allegations in Paragraph 16 of Plaintiff's Complaint to the extent they are conclusions of law.

17.     In pertinent part, each Contract provides that Omnicare would submit monthly invoices to the Emerald Facilities for all fees for which each facility was responsible, and that the Emerald Facilities would remit full payment within 60 days of the date of the invoice.

**ANSWER:**     Paragraph 17 of Plaintiff's Complaint refers to documents which speak for themselves.

---

[1] Each Emerald Facility entered into a set of Contracts – a PSA and PCA – that were separate from the Contracts executed by the other Emerald Facilities. However, upon information and belief, each Contract was negotiated on behalf of the Emerald Facilities by a common ownership and management team.

18.     Each Contract also provides that invoice charges were to be disputed, if at all, within 30 days of the invoice date. No charge could be disputed more than 30 days after the pertinent invoice date.

**ANSWER:**     Paragraph 18 of Plaintiff's Complaint refers to documents which speak for themselves. Further answering, Defendants object to the allegations contained in Paragraph 18 of Plaintiff's Complaint to the extent they are conclusions of law.

19.     Each contract also provides that the Emerald Facilities may not dispute invoice charges for which they have failed to remit timely payment in accordance with the terms of the Contract.

**ANSWER:**     Paragraph 19 of Plaintiff's Complaint refers to documents which speak for themselves. Further answering, Defendants object to the allegations contained in Paragraph 10 of Plaintiff's Complaint to the extent they are conclusions of law.

20.     Finally, each Contract provides that the failure to remit timely payment for Pharmacy Products and/or Pharmacy Services would result in interest on any such unpaid amounts, at the amount of 1.5% (or the maximum rate allowed by law, if less), which accrued from the date payment became due until receipt of payment by Omnicare.

**ANSWER:**     Paragraph 20 of Plaintiff's Complaint refers to documents which speak for themselves. Further answering, Defendants object to the allegations contained in Paragraph 20 of Plaintiff's Complaint to the extent they are conclusions of law.

21.     Between August 2017 and April 2018, Omnicare provided Pharmacy Products, Pharmacy services, and Consultant Services to the Emerald Facilities, for which the Emerald Facilities failed to remit full payment.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 21 of Plaintiff's Complaint and as such demands strict proof thereof.

22.     The Southwest Facility owes Omnicare the principal sum of $347,970.25 for Pharmacy Products, Pharmacy Services, and Consultant Services, and $101,863.33 in interest accrued on the principal owed through August 31, 2019.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 22 of Plaintiff's Complaint and as such demands strict proof thereof.

23.     The Tulsa Facility owes Omnicare the principal sum of $330,205.83 for Pharmacy Products, Pharmacy Services, and Consultant Services, and $94,546.24 in interest accrued on the principal owed through August 31, 2019.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 23 of Plaintiff's Complaint and as such demands strict proof thereof.

24.     The Midwest City Facility owes Omnicare the principal sum of $309,174.82 for Pharmacy Products, Pharmacy Services, and Consultant Services, and $89,368.10 in interest accrued on the principal owed through August 31, 2019.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 24 of Plaintiff's Complaint and as such demands strict proof thereof.

25.     Despite timely demands for payment, as required by the Contracts, the Emerald Facilities have not discharged their obligations or paid the amounts due and owing under the Contracts.

**ANSWER:**     Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 25 of Plaintiff's Complaint.

## COUNT I – ACCOUNT STATED

26.     Omnicare reasserts and incorporates by reference each allegation above and below as if fully set forth herein.

**ANSWER:**     Defendants restate their answers and objections to Paragraphs 1 through 25 and all following Paragraphs of Plaintiff's Complaint as through fully stated herein.

27.     The Contracts are valid and enforceable contracts.

**ANSWER:**     Defendants object to the allegations contained in Paragraph 27 of Plaintiff's Complaint to the extent they are conclusions of law.

28.     Pursuant to the Contracts, Omnicare sent monthly invoices to each of the Emerald Facilities, detailing all fees for which it was responsible.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 28 of Plaintiff's Complaint and as such demands strict proof thereof.

29.     No Emerald Facility has timely disputed the amount owed, and none of them have remitted timely payment for the goods and services it received. Accordingly, the Emerald Facilities have waived the right to challenge and have admitted the amounts due.

**ANSWER:**     Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 29 of Plaintiff's Complaint.

## COUNT II – BEACH OF CONTRACT

30.     Omnicare reasserts and incorporates by reference each allegation above and below as if fully set forth herein.

**ANSWER:**     Defendants restate their answers and objections to Paragraphs 1 through 29 and all following Paragraphs of Plaintiff's Complaint as through fully stated herein.

31.     The Contracts are valid and enforceable contracts.

**ANSWER:**    Defendants object to the allegations contained in Paragraph 31 of Plaintiff's Complaint to the extent they are conclusions of law.

32.    Between August 2017 and April 2018, the Emerald Facilities accepted Pharmacy Products, Pharmacy Services, and Consultant Services pursuant to the Contracts, for which they failed to remit full payment.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 32 of Plaintiff's Complaint and as such demands strict proof thereof.

33.    Despite Omnicare's timely demands for payment, the Emerald Facilities have not fully discharged their obligation to pay Omnicare all of the amounts due and owing under the Contracts.

**ANSWER:**    Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 33 of Plaintiff's Complaint.

34.    The Emerald Facilities' failure to pay Omnicare constitutes a material breach of each of the Contracts, the direct and proximate result of which is damages to Omnicare in the amount of $1,273,128.528 (sic), consisting of $987,350.91 in principal and $285,777.67 in interest accrued through August 31, 2019.

**ANSWER:**    Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 34 of Plaintiff's Complaint.

## COUNT III – UNJUST ENRICHMENT

35.    Omnicare reasserts and incorporates by reference each allegation above and below as if fully set forth herein.

**ANSWER:**    Defendants restate their answers and objections to Paragraphs 1 through 34 and all following Paragraphs of Plaintiff's Complaint as through fully stated herein.

36.     Omnicare supplied valuable goods and services to the Emerald Facilities, which the Emerald Facilities accepted and retained.

**ANSWER:**    Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 36 of Plaintiff's Complaint.

37.     Omnicare did not provide these goods and services to the Emerald Facilities gratuitously; it did so with the reasonable expectation of compensation for the Emerald Facilities.

**ANSWER:**    Defendants are without sufficient knowledge with which to form a belief as to the truth of the allegations contained in Paragraph 37 of Plaintiff's Compliant and therefore denies the same and demands strict proof thereof.

38.     Omnicare has not received fair and adequate payment from the Emerald Facilities for those goods and services it provided, and the Emerald Facilities accepted.

**ANSWER:**    Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 38 of Plaintiff's Complaint.

39.     The Emerald Facilities have been unjustly enriched at the expense of Omnicare.

**ANSWER:**    Defendants object to the legal conclusions contained in Paragraph 39 of Plaintiff's Complaint.

40.     The Emerald Facilities have benefited from their unlawful acts, which has caused Omnicare to suffer injury and monetary loss. The Emerald Facilities have therefore been unjustly enriched, and equity and good conscience require them to disgorge to Omnicare all such unjust enrichment in an amount to be determined at trial.

**ANSWER:**    Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 40 of Plaintiff's Complaint.

## <u>COUNT IV – GOODS ACCEPTED BETWEEN</u>
## <u>MERCHANTS, DELAWARE COMMERCIAL CODE</u>

41.     Omnicare reasserts and incorporates by reference the allegations in Paragraphs 1-40 as if fully set forth herein.

**<u>ANSWER:</u>**     Defendants restate their answers and objections to Paragraphs 1 through 40 of Plaintiff's Compliant as though fully stated herein.

42.     Under the Delaware Commercial Code, Omnicare and the Emerald Facilities are each "merchants," and Pharmacy Products are "goods."

**<u>ANSWER:</u>**     Defendants refer to the Delaware Commercial Code which speaks for itself and further answering, Defendants object to the legal conclusions contained in Paragraph 42 of Plaintiff's Complaint.

43.     The Emerald Facilities demonstrated their acceptance of Omnicare's satisfactory goods by not rejecting them, but instead by using them for their own business.

**<u>ANSWER:</u>**     Defendants object to Paragraph 43 of Plaintiff's Complaint to the extent it contains conclusions of law.

44.     Omnicare invoiced the Emerald Facilities for all they goods they accepted.

**<u>ANSWER:</u>**     Defendants deny each and every allegation contained in Paragraph 44 of Plaintiff's Complaint.

45.     The Emerald Facilities thus owe Omnicare damages, in an amount equal to the principal invoiced and interest thereon, for the Pharmacy Goods sold and delivered by Omnicare and accepted without objection by the Emerald Facilities.

**<u>ANSWER:</u>**     Defendants deny each and every allegation and further answering, Defendants object to the legal conclusions contained in Paragraph 45 of Plaintiff's Complaint.

## **AFFIRMATIVE DEFENSES**

Defendants, Garden Manor Rehab and Nursing of Southwest, LLC d/b/a Emerald Care Center Southwest, LLC; Garden Manor Rehab and Nursing of Tulsa, LLC d/b/a Emerald Care Center Tulsa; and Garden Rehab and Nursing of Midwest City, LLC d/b/a Emerald Care Center Midwest (collectively referred to herein as "Defendants"), by and through their attorney, The Law Office of James Tobia LLC, while continuing to deny any liability to Plaintiff and without prejudice to their Answer set forth above, for their affirmative defenses to Plaintiff's Complaint , states as follows:

### **First Affirmative Defense**

This action and each claim asserted herein fails to state sufficient facts to constitute any claim for relief.

### **Second Affirmative Defense**

Defendants acted responsibly and in good faith at all times material herein based on relevant facts and circumstances known to him at the time.

### **Third Affirmative Defense**

The alleged injuries were caused by Plaintiff's own acts and/or omission with regard to the obligations under the Agreements, including but not limited to one or more of the following:

(a)     Plaintiff failed to invoice correct pricing for pharmaceutical products provided;

(b)     Plaintiff failed to submit bills to appropriate payor source;

(c)     Plaintiff improperly used split-billing techniques when submitting invoices; and

(d)     Plaintiff failed to provide appropriate credits for medications returned unused.

**<u>Fourth Affirmative Defense</u>**

Defendants reserve the right to assert any additional defense of which it may learn through discovery.

WHEREFORE, Defendants, Garden Manor Rehab and Nursing of Southwest, LLC d/b/a Emerald Care Center Southwest, LLC; Garden Manor Rehab and Nursing of Tulsa, LLC d/b/a Emerald Care Center Tulsa; and Garden Rehab and Nursing of Midwest City, LLC d/b/a Emerald Care Center Midwest, deny that the Plaintiff is entitled to judgment against these Defendants in the sum of any amount whatsoever and these Defendants pray that Plaintiff's cause of action be dismissed and that judgment be entered in favor of Defendants and against the Plaintiff for any relief this court deems just and proper.

## COUNTERCLAIM I - DEFENDANT-COUNTERCLAIMANT PLAINTIFF THE SOUTHWEST FACILITY AGAINST PLAINTIFF-COUNTERCLAIM DEFENDANT FOR COMMON LAW FRAUD

1.  The allegations and answers to Plaintiff-Counterclaim Defendant's Complaint are restated and incorporated herein by reference.

2.  Jurisdiction and venue are proper for this counterclaim to the extent that they are deemed proper for Plaintiff-Counterclaim Defendant's initial allegations.

3.  Pursuant to the Southwest Facility Pharmacy Agreement, the Southwest Facility agreed to remit payment to Plaintiff-Counterclaim Defendant in exchange for Plaintiff-Counterclaim Defendant's delivery of pharmaceutical goods and services to the Southwest Facility.

4.  During the course of the parties' business relationship going back several years, Plaintiff-Counterclaim Defendant made numerous demands for payment to the Southwest Facility, but these payment amounts were fraudulently determined.

5.  Based upon information and belief, Plaintiff-Counterclaim Defendant engaged in a pattern of inaccurate, deceptive and unconscionable billing practices that were done knowingly and with the intent to deceive, damage and mislead the Southwest Facility for years, including but not limited to failing to submit bills to appropriate payor sources; charging for patient medication despite the patient being discharged; dispensing duplicate and early medication refills; and submitting hundreds of pages of invoices each month in an attempt to hide their billing misconduct.

6.  For example, just in the period between August 2017 and April 2018, Plaintiff-Counterclaim Defendant improperly billed for drugs that were returned unused which caused the Southwest Facility an additional $11,556.49 in unjustified costs.

7.  Based on information and belief, Plaintiff-Counterclaim Defendant's inaccurate,

deceptive, and unconscionable billing practices continued over the course of several years; in one

nine (9) month period causing the Southwest Facility approximately $48,236.31 in unjustified

costs.

8.   Upon information and belief, the billing inaccuracies by Plaintiff-Counterclaim

Defendant described above were intentional and designed to deceptively overbill the Southwest

Facility and collect monies not actually owed to Defendant.

9.   These inaccurate, deceptive, and unconscionable billing practices by Plaintiff-

Counterclaim Defendant were done knowingly, and with the intent to deceive, damage, and

mislead the Southwest Facility.

WHEREFORE, Defendant-Counterclaim Plaintiff the Southwest Facility respectfully

requests that this Court enter judgment in their favor against Plaintiff-Counterclaim Defendant

for an amount in excess of $48,236.31, not including fees and costs, and any further relief this

Court deems just and proper.

### COUNTERCLAIM II - DEFENDANT-COUNTERCLAIMANT PLAINTIFF THE SOUTHWEST FACILITY AGAINST PLAINTIFF-COUNTERCLAIM DEFENDANT FOR BREACH OF CONTRACT

10. The allegations and answers to Plaintiff-Counterclaim Defendant's Complaint and

paragraphs 1-9 of these Counterclaims are restated and incorporated herein by reference.

11. In the alternative, the Southwest Facility sues Plaintiff-Counterclaim Defendant for

breach of contract.

12. The Southwest Facility and Plaintiff-Counterclaim Defendant entered into a valid,

binding, and enforceable contract between them known here as the Southwest Facility Pharmacy

Agreement.

13. As part of this agreement, Plaintiff-Counterclaim Defendant agreed to provide

pharmaceutical goods and services to the Southwest Facility and charge the Southwest Facility

fair and reasonable prices based on the terms of the contract.

14. Plaintiff-Counterclaim Defendant failed to charge pursuant to the contracted for terms

and instead submitted deceitful, wrongful, and fraudulent bills to the Southwest Facility in

violation of and in breach of the contract.

15. For example, Plaintiff-Counterclaim Defendant's failure to adhere to the agreed upon

contract terms caused the Southwest Facility to be charged $48,236.31 in unjustified costs in just

a nine (9) month period.

16. Plaintiff-Counterclaim Defendant's improper billing of the Southwest Facility constitutes

a breach of the Southwest Facility Pharmacy Agreement.

WHEREFORE, Defendant-Counterclaim Plaintiff the Southwest Facility respectfully

requests that this Court enter judgment in their favor and against Plaintiff-Counterclaim

Defendant  for an amount in excess of $48,236.31, not including fees and costs, and any further

relief this Court deems just and proper.

## COUNTERCLAIM III - DEFENDANT-COUNTERCLAIMANT PLAINTIFF THE TULSA FACILITY AGAINST PLAINTIFF-COUNTERCLAIM DEFENDANT FOR COMMON LAW FRAUD

17. The allegations and answers to Plaintiff-Counterclaim Defendant's Complaint and

paragraphs 1-16 of these Counterclaims are restated and incorporated herein by reference.

18. Pursuant to the Effective Tulsa Facility Pharmacy Agreement, the Tulsa Facility agreed

to remit payment to Plaintiff-Counterclaim Defendant in exchange for Plaintiff-Counterclaim

Defendant's delivery of pharmaceutical goods and services to the Tulsa Facility.

19. During the course of the parties' business relationship going back several years, Plaintiff-

Counterclaim Defendant made numerous demands for payment to the Tulsa Facility, but these payment amounts were fraudulently determined.

20. Based upon information and belief, Plaintiff-Counterclaim Defendant engaged in a pattern of inaccurate, deceptive and unconscionable billing practices that were done knowingly and with the intent to deceive, damage and mislead the Tulsa Facility for years, including but not limited to failing to submit bills to appropriate payor sources; improperly refilling prescriptions too early; ignoring the availability of medication from the cheapest manufacturer available; and submitting hundreds of pages of invoices each month in an attempt to hide their billing misconduct.

21. For example, just in the period between August 2017 and April 2018, Plaintiff-Counterclaim Defendant improperly billed for medication returned unused which caused the Tulsa Facility an additional $9,196.38 in unjustified costs.

22. Additionally, as a further example of Plaintiff-Counterclaim Defendat's fraudulent billing practice, in the period between August 2017 and April 2018, Plaintiff-Counterclaim Defendant improperly re-billed the Tulsa Facility for medication previously charged for, which costs the Tulsa Facility an additional $3,020.34 in improper costs.

23. Based on information and belief, Plaintiff-Counterclaim Defendant's inaccurate, deceptive, and unconscionable billing practices continued over the course of several years;  in one nine (9) month period causing Tulsa Facility approximately $34,335.16 in unjustified costs.

24. Upon information and belief, the billing inaccuracies by Plaintiff-Counterclaim Defendant described above were intentional and designed to deceptively overbill the Tulsa Facility and collect monies not actually owed to Defendant.

25. These inaccurate, deceptive, and unconscionable billing practices by Plaintiff-

Counterclaim Defendant were done knowingly, and with the intent to deceive, damage, and mislead the Tulsa Facility.

WHEREFORE, Defendant-Counterclaim Plaintiff the Tulsa Facility respectfully requests that this Court enter judgment in their favor against Plaintiff-Counterclaim Defendant for an amount in excess of $34,335.16, not including fees and costs, and any further relief this Court deems just and proper.

### COUNTERCLAIM IV - DEFENDANT-COUNTERCLAIMANT PLAINTIFF THE TULSA FACILITY AGAINST PLAINTIFF-COUNTERCLAIM DEFENDANT FOR BREACH OF CONTRACT

26. The allegations and answers to Plaintiff-Counterclaim Defendant's Complaint and paragraphs 1-25 of these Counterclaims are restated and incorporated herein by reference.

27. In the alternative, the Tulsa Facility sues Plaintiff-Counterclaim Defendant for breach of contract.

28. The Tulsa Facility and Plaintiff-Counterclaim Defendant entered into a valid, binding, and enforceable contract between them known here as the Effective Tulsa Facility Pharmacy Agreement.

29. As part of this agreement, Plaintiff-Counterclaim Defendant agreed to provide pharmaceutical goods and services to the Tulsa Facility and charge the Tulsa Facility fair and reasonable prices based on the terms of the contract.

30. Plaintiff-Counterclaim Defendant failed to charge pursuant to the contracted for terms and instead submitted deceitful, wrongful, and fraudulent bills to the Tulsa Facility in violation of and in breach of the contract.

31. For example, Plaintiff-Counterclaim Defendant's failure to adhere to the agreed upon

contract terms caused the Tulsa Facility to be charged $34,335.16 in unjustified costs in just a

nine (9) month period.

32. Plaintiff-Counterclaim Defendant's improper billing of the Tulsa Facility constitutes a

breach of the Effective Tulsa Facility Pharmacy Agreement.

WHEREFORE, Defendant-Counterclaim Plaintiff the Tulsa Facility respectfully requests

that this Court enter judgment in their favor and against Plaintiff-Counterclaim Defendant for an

amount in excess of $34,335.16, not including fees and costs, and any further relief this Court

deems just and proper.

## COUNTERCLAIM V - DEFENDANT-COUNTERCLAIMANT PLAINTIFF THE MIDWEST FACILITY AGAINST PLAINTIFF-COUNTERCLAIM DEFENDANT FOR COMMON LAW FRAUD

33. The allegations and answers to Plaintiff-Counterclaim Defendant's Complaint and

paragraphs 1-32 of these Counterclaims are restated and incorporated herein by reference.

34. Pursuant to the Midwest Facility Pharmacy Agreement, the Midwest Facility agreed to

remit payment to Plaintiff-Counterclaim Defendant in exchange for Plaintiff-Counterclaim

Defendant's delivery of pharmaceutical goods and services to Midwest Facility.

35. During the course of the parties' business relationship going back several years, Plaintiff-

Counterclaim Defendant made numerous demands for payment to the Midwest Facility, but

these payment amounts were fraudulently determined.

36. Based upon information and belief, Plaintiff-Counterclaim Defendant engaged in a

pattern of inaccurate, deceptive and unconscionable billing practices that were done knowingly

and with the intent to deceive, damage and mislead the Midwest Facility for years, including but

not limited to failing to submit bills to appropriate payor sources; improperly refilling

prescriptions too early; ignoring the availability of medication from the cheapest manufacturer available; and submitting hundreds of pages of invoices each month in an attempt to hide their billing misconduct.

37. For example, just in the period between August 2017 to April 2018, Plaintiff-Counterclaim Defendant improperly billed for medication returned unused which caused the Midwest Facility an additional $7,224.89 in unjustified costs.

38. Based on information and belief, Plaintiff-Counterclaim Defendant's inaccurate, deceptive, and unconscionable billing practices continued over the course of several years;  in one nine (9) month period causing Midwest Facility approximately $34,674.61 in unjustified costs.

39. Upon information and belief, the billing inaccuracies by Plaintiff-Counterclaim Defendant described above were intentional and designed to deceptively overbill the Midwest Facility and collect monies not actually owed to Defendant.

40. These inaccurate, deceptive, and unconscionable billing practices by Plaintiff-Counterclaim Defendant were done knowingly, and with the intent to deceive, damage, and mislead the Midwest Facility.

WHEREFORE, Defendant-Counterclaim Plaintiff the Midwest Facility respectfully requests that this Court enter judgment in their favor against Plaintiff-Counterclaim Defendant for an amount in excess of $34,674.61, not including fees and costs, and any further relief this Court deems just and proper.

## COUNTERCLAIM VI - DEFENDANT-COUNTERCLAIMANT PLAINTIFF THE MIDWEST FACILITY AGAINST PLAINTIFF-COUNTERCLAIM DEFENDANT FOR BREACH OF CONTRACT

41. The allegations and answers to Plaintiff-Counterclaim Defendant's Complaint and paragraphs 1-40 of these Counterclaims are restated and incorporated herein by reference.

42. In the alternative, the Midwest Facility sues Plaintiff-Counterclaim Defendant for breach of contract.

43. The Midwest Facility and Plaintiff-Counterclaim Defendant entered into a valid, binding, and enforceable contract between them known here as the Midwest Facility Pharmacy Agreement.

44. As part of this agreement, Plaintiff-Counterclaim Defendant agreed to provide pharmaceutical goods and services to the Midwest Facility and charge the Midwest Facility fair and reasonable prices based on the terms of the contract.

45. Plaintiff-Counterclaim Defendant failed to charge pursuant to the contracted for terms and instead submitted deceitful, wrongful, and fraudulent bills to the Midwest Facility in violation of and in breach of the contract.

46. For example, Plaintiff-Counterclaim Defendant's failure to adhere to the agreed upon contract terms caused Midwest Facility to be charged $34,674.61 in unjustified costs in just a nine (9) month period.

47. Plaintiff-Counterclaim Defendant's improper billing of the Midwest Facility constitutes a breach of the Midwest Facility Pharmacy Agreement.

WHEREFORE, Defendant-Counterclaim Plaintiff the Midwest Facility respectfully requests that this Court enter judgment in their favor and against Plaintiff-Counterclaim

Defendant for an amount in excess of $34,674.61, not including fees and costs, and any further

relief this Court deems just and proper.

Respectfully Submitted,

By:      /s/   James Tobia
James Tobia (DE Bar No. 3798)
**THE LAW OFFICE OF JAMES TOBIA, LLC**
1716 Wawaset Street
Wilmington, DE 19806
(302)655-5303
*Attorney for Defendants*

OF COUNSEL:
NATAHN & KAMIONSKI, LLP
33 W. Monroe, St., Suite 1830
Chicago, IL 60603
(312)612-2255