**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LANGSAM HEALTH SERVICES, LLC, | ) ) ) |
| Plaintiff, | ) Case No. 19-CV-01696 |
| v. | ) Judge Leonard P. Stark |
| GARDEN MANOR REHAB AND NURSING OF SOUTHWEST, LLC d/b/a EMERALD CARE CENTER SOUTHWEST, LLC, et al., | ) ) ) ) ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF LANGSAM HEALTH SERVICES, LLC'S**
**MOTION TO DISMISS EACH OF DEFENDANTS' COUNTERCLAIMS**

Dated: November 15, 2019

**BALLARD SPAHR LLP**

William Burton (No. 6243)
919 N. Market Street
Wilmington, DE 19801
Telephone: (302) 252-4465
E-mail: burtonw@ballardspahr.com

Justin Kerner, Esq.
   (admitted *pro hac vice*)
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
E-mail: kernerj@ballardspahr.com

*Counsel for Plaintiff,*
*Langsam Health Services, LLC*

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II. SUMMARY OF ARGUMENT ....................................................................................... 1

III. CONCISE STATEMENT OF FACTS ............................................................................ 2

IV. ARGUMENT .................................................................................................................. 4

    A. Standard of Review .................................................................................................. 4

    B. Each Fraud Claim is Barred by the Economic Loss Doctrine and Should be
       Dismissed with Prejudice .......................................................................................... 5

    C. Each Fraud Claim is also Barred by Delaware's Separate Damages Rule ................ 8

    D. In Any Event, the Fraud Claims were not Pleaded with the Particularity and Rigor
       Required by Federal Rule of Civil Procedure 9(b) ..................................................... 8

    E. Defendants have Failed to Plead Contract Claims Upon Which Relief May
       be Granted ................................................................................................................ 10

       1. Defendants have not pleaded facts establishing that they preserved the right to
          pursue their Contract Claims .............................................................................. 11

       2. The Contract claims also fail because Defendants neither refer nor allude to any
          specific contractual term that Omnicare supposedly failed to honor ................... 12

V. CONCLUSION ............................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Labs v. Owens*,
 2014 Del. Super. LEXIS 701 (Del. Super. Sept. 15, 2014) ........................................................6

*Anthony Allega Cement Constr., Inc. v. Johnson Controls Fed. Sys./Versar, LLC*,
 2019 U.S. Dist. LEXIS 69371 (D. Del. Apr. 24, 2019)........................................................11, 12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................................................................4, 12, 13

*Ashland LLC v. Samuel J. Heyman 1981 Continuing Trust*,
 2018 Del. Super. LEXIS 267 (Del. Super. June 21, 2018)........................................................8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)....................................................................................................................4

*Brasby v. Morris*,
 2007 Del. Super. LEXIS 73 (Del. Super. Mar. 29, 2007).......................................................5, 7

*Collab9, LLC v. En Pointe Techs. Sales, LLC*,
 2019 Del. Super. LEXIS 443 (Del. Super. Sept. 17, 2019) ....................................................5, 8

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)......................................................................9

*Doehla v. Wathne Ltd., Inc.*,
 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. Aug. 3, 1999).........................................................10

*Export-Import Bank of Korea v. ASI Corp.*,
 2017 U.S. LEXIS 223381 (C.D. Cal. Jan. 31, 2017) ................................................................9

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
 2017 Del. Super. LEXIS 1068 (Del. Super. Mar. 17, 2017).....................................................8

*Gerbitz v. ING Bank*,
 967 F. Supp. 2d 1072 (D. Del. 2013) (Stark, J.) .......................................................................9

*GMC v. New A.C. Chevrolet*,
 263 F.3d 296 (3d Cir. 2001).......................................................................................................4

*Good v. Moyer*,
 2012 Del. Super. LEXIS 453 (Del. Super. Oct. 10, 2012).......................................................11

*Great Am. Ins. Co. v. Linderman*,
 116 F. Supp. 3d 1183 (D. Or. July 15, 2015) ............................................................................9

*Indianapolis Life Ins. Co. v. Hentz*,
 2008 U.S. Dist. LEXIS 76821 (M.D. Pa. Sept. 30, 2008) .........................................................6

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
 844 F. Supp. 2d 519 (D. Del. 2012) ......................................................................................5, 7

*Liafail, Inc. v. Learning 2000*,
 2002 U.S. Dist. LEXIS 22620 (D. Del. Nov. 25, 2002) ............................................................9

*Mariotti v. Mariotti Bldg. Prods., Inc.*,
 714 F.3d 761 (3d Cir. 2013) ......................................................................................................4

*Morse v. Lower Merion Sch. Dist.*,
 132 F.3d 902 (3d Cir. 1997) ......................................................................................................4

*Pinkert v. John J. Olivieri, P.A.*,
 2001 U.S. Dist. LEXIS 8133 (D. Del. 2001) ............................................................................7

*REI Holdings, LLC v. LienClear – 0001, LLC*,
 2019 U.S. Dist. LEXIS 130285 (D. Del. Aug. 5, 2019) ............................................................9

*Richie v. Hillstone Envtl. Partners, LLC*,
 2019 U.S. Dist. LEXIS 113397 (D. Del. July 9, 2019) .............................................................5

*Ridley v. Bayhealth Med. Ctr., Inc.*,
 2018 Del. Super. LEXIS 138 (Del. Super. Mar. 20, 2018) .......................................................8

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
 365 F.3d 353 (5th Cir. 2004) ...................................................................................................10

*State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*,
 2016 U.S. Dist. LEXIS 18805 (E.D. Pa. Feb. 17, 2016) ...........................................................9

*Templeton v. EmCare, Inc.*,
 868 F. Supp. 2d 333 (D. Del. 2012) ......................................................................................5, 6

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
 839 F.3d 242 (3d Cir. 2016) ......................................................................................................8

*United States ex rel. Whatley v. Eastwick Coll.*,
 657 F. App'x 89 (3d Cir. 2016) .................................................................................................9

*US Ecology, Inc. v. Allstate Power Vac, Inc.*,
 2018 Del. Ch. LEXIS 194 (Del. Ch. June 18, 2018) ..............................................................13

*Yu v. GSM Nation, LLC*,
   2018 Del. Super. LEXIS 382 (Del. Super. Apr. 24, 2018) ........................................................8

**Statutes**

28 U.S.C. § 1332(a) ........................................................................................................................1

**Rules**

Federal Rule of Civil Procedure 8 ............................................................................................8, 12

Federal Rule of Civil Procedure 9 ...............................................................................2, 8, 9, 10

Federal Rule of Civil Procedure 12 ..........................................................................................1, 4

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS, § 224, cmt. 7(e) ......................................................11, 12

RESTATEMENT (SECOND) OF CONTRACTS, § 230, cmt. a...............................................................11

Plaintiff, Langsam Health Services, LLC ("Omnicare"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submits this Brief in Support of its Motion to Dismiss Each of Defendants' Counterclaims (the "Motion").

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Omnicare, an institutional pharmacy that provides pharmaceutical goods and related services to long-term care and skilled nursing facilities, filed the Complaint in this case on September 11, 2019, with jurisdiction premised on diversity of citizenship (pursuant to 28 U.S.C. § 1332(a)). In the Complaint, Omnicare asserted claims against Defendants—Garden Manor Rehab and Nursing of Southwest, LLC (the "Southwest Facility"), Garden Manor Rehab and Nursing of Tulsa, LLC (the "Tulsa Facility"), and Garden Manor Rehab and Nursing of Midwest City, LLC (the "Midwest Facility")—for payments owed under a series of contracts for the provision of pharmacy goods and services. Specifically, it asserted claims for account stated, breach of contract, (in the alternative) unjust enrichment, and for violations of the Delaware Commercial Code. Defendants answered the Complaint on November 4, 2019, and asserted individual Counterclaims for common law fraud and breach of contract.

Omnicare now moves to dismiss each of Defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state claims upon which relief may be granted.

## II.    SUMMARY OF ARGUMENT

1.    Defendants' Counterclaims for fraud relate solely to Omnicare's performance under the contracts at issue—specifically, to invoices, billing practices, and supposed "billing inaccuracies." Accordingly, the economic loss doctrine bars those Counterclaims, and they should be dismissed with prejudice.

2.    Through their fraud and breach of contract Counterclaims, each Defendant seeks the same damages. For example, the Southwest Facility seeks exactly $48,236.31 in conjunction

1

with both its fraud Counterclaim (Counterclaim I) and its breach of contract Counterclaim (Counterclaim II). Thus, if the fraud Counterclaims are not dismissed pursuant to the economic loss doctrine, then they should be dismissed under Delaware's "separate damages" doctrine.

3.     In any event, the fraud Counterclaims should be dismissed because they have not been pleaded with the particularity and rigor demanded by Federal Rule of Civil Procedure 9(b). Defendants rest on overly general allegations that do not reveal the "who, what, where, when, how, and why" of the alleged fraud, and do not provide sufficient notice as to the misconduct with which Omnicare has been charged.

4.     The breach of contract Counterclaims, which rest on a litany of supposed invoicing issues, fare no better. In each contract at issue, Defendants agreed that all invoice-related disputes were waived except for those for which: (1) timely payment was made, in full; and (2) timely, written notice was provided to Omnicare. Because Defendants have not pleaded the facts necessary to show that they satisfied either of those conditions, these Counterclaims should be dismissed.

5.     Finally, Defendants' breach of contract Counterclaims should be dismissed because Defendants have not plausibly alleged any breach. Each Defendant broadly asserts that it was wronged, but none of the Defendants have referred or even alluded to specific contractual terms that Omnicare supposedly failed to honor.

### III.    CONCISE STATEMENT OF FACTS

The parties agree that Omnicare contracted with each Defendant and agreed to provide pharmaceutical goods and services, for which it invoiced each Defendant monthly. (*See* Compl., ¶¶ 1, 16-17; Counterclaims, ¶¶ 3-4, 12-13, 18-19, 28-29, 34-35, 43-44.) They also agree that Omnicare provided such goods and services between August 2017 and April 2018, and that Omnicare sent Defendants invoices that covered that same time period. (*See* Compl., ¶ 32; Counterclaims, ¶¶ 6-7, 21-22, 37-38.)

Moreover, the parties do not dispute the express terms of the contracts at issue. (*See, e.g.*, Answer, ¶¶ 17-20 (asserting those contracts are "documents which speak for themselves").)[1]

In each of the contracts at issue, Defendants agreed that all invoice-related disputes were waived except for those for which timely, written notice was provided to Omnicare. Specifically, they each agreed to "notify [Omnicare] of any amounts in dispute within thirty (30) days of the date of an invoice (the 'Invoice Date')," and they agreed that no invoice "may be disputed more than thirty (30) days after the Invoice Date." (*E.g.*, Burton Decl., Ex. A, Redacted Pharmacy Services Agreement, § 3.4(a).)[2] They also agreed to pay all invoices in full within 60 days of the Invoice Date (the "Payment Terms"), and that any charge "not paid in accordance with the Payment Terms may not be disputed . . . ." (*Id.* at §§ 3.3(b), 3.4(b).)[3]

Despite those contractual agreements, Defendants now assert six Counterclaims for fraud and breach of contract, all of which rest on a litany of supposed invoicing issues. (*See generally* Counterclaims.)[4] Each Counterclaim arises from the contracts between Omnicare and Defendants. But the Counterclaims are devoid of any allegation establishing that Defendants preserved their invoice-related disputes by satisfying the pertinent terms of their contracts—§ 3.4(b) (payment in full) and § 3.4(a) (timely, written notice of dispute).

---

[1] Defendants jointly filed an Amended Answer with Affirmative Defenses and Counterclaims on November 12, 2019 (ECF No. 10). Their joint Answer and individual Counterclaims appear in that one document but, for ease of reference, are separately cited here.

[2] Each Defendant contracted with Omnicare and entered into a joint Pharmacy Services Agreement ("PSA") and a Pharmacy Consultant Agreement ("PCA")—whereby the Defendants jointly contracted with Omnicare.

[3] (*See also* Burton Decl., Ex. B, Redacted PCA, §§ 3.3(b), 3.4(b).)

[4] Each Defendant asserts its own Counterclaims for both fraud and breach of contract. Because each fraud Counterclaim (the "Fraud Claims") and breach of contract Counterclaim ("Contract Claims") are materially the same as the others, they are addressed collectively, rather than individually, below.

## IV. ARGUMENT

Defendants have not pleaded any cognizable claim for relief. Accordingly, as detailed below, each of their Counterclaims should be dismissed, and their Fraud Claims should be dismissed with prejudice.

### A. Standard of Review

A counterclaim, like any other "claim for relief in [a] pleading," may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6); *see also, e.g.*, *GMC v. New A.C. Chevrolet*, 263 F.3d 296, 324-25 (3d Cir. 2001). Under that standard, dismissal is proper if the defendant (*i.e.*, the counterclaim plaintiff) fails to allege facts sufficient to establish all of the essential elements of his counterclaims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). The Court must accept the defendant's well-pleaded allegations and the reasonable inferences that may be drawn therefrom, and must view them in the light most favorable to the defendant. *See Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 764-65 (3d Cir. 2013). But the Court need not credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

The Supreme Court of the United States has cautioned that the Federal Rules of Civil Procedure "require[] more than labels and conclusions," and that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Put simply, those Rules "demand[] more than an unadorned, the [other-party]-unlawfully-harmed-me accusation," and they will not "unlock the doors of discovery for a [party] armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

The Counterclaims in this case do not rise above the level of mere "labels and conclusions," and, otherwise, are either implausible or legally untenable. Thus, each should be dismissed.

4

### B. Each Fraud Claim is Barred by the Economic Loss Doctrine and Should be Dismissed with Prejudice

"The economic loss rule is a court-adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged." *Brasby v. Morris*, 2007 Del. Super. LEXIS 73, at *18 (Del. Super. Mar. 29, 2007). "The underlying purpose of the economic loss doctrine is to prevent tort law from reallocating risks between parties who fairly have negotiated an arms-length contract." *Richie v. Hillstone Envtl. Partners, LLC*, 2019 U.S. Dist. LEXIS 113397, at *8 (D. Del. July 9, 2019) (citation, quotation marks, and alterations omitted), *adopted by* 2019 U.S. Dist. LEXIS 179308, at *1 (D. Del. Aug. 26, 2019); *see also Brasby*, 2007 Del. Super. LEXIS 73, at *18 ("The driving principle for the rule is the notion that contract law provides a better and more specific remedy than tort law."). Where, as here, claims focus on allegedly deceitful or fraudulent performance under a valid and enforceable contract, and damages can be calculated under breach of contract principles, the economic loss doctrine applies, and dismissal with prejudice is warranted. *See Richie*, 2019 U.S. Dist. LEXIS 113397, at *8-9 (recommending dismissal of fraud claims governed by an enforceable asset purchase agreement); *see also Brasby*, 2007 Del. Super. LEXIS 73, at *23 ("The Court finds no reason to allow . . . a claim of fraud where the injury alleged is best addressed by the law of contract.").

Notably, *Brasby* and *Richie* do not stand alone. State and federal courts routinely dispose of fraud claims "where overlapping contract claims adequately address the injury alleged." *Collab9, LLC v. En Pointe Techs. Sales, LLC*, 2019 Del. Super. LEXIS 443, at *9 (Del. Super. Sept. 17, 2019); *see also Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012) (dismissing fraud claim because "the only fraud alleged . . . is fraud in the performance of the contract"); *Templeton v. EmCare, Inc.*, 868 F. Supp. 2d 333, 340-41 (D. Del. 2012) (dismissing fraud counterclaim under economic loss doctrine because "defendant merely

5

alleges fraudulent misrepresentation [that] pertains to the performance of the contract"); *Indianapolis Life Ins. Co. v. Hentz*, 2008 U.S. Dist. LEXIS 76821, at *20-21 (M.D. Pa. Sept. 30, 2008) (applying Delaware law) ("The negligence and common law fraud claims relate directly to the performance of the contract underlying this dispute and merely recast the dispute in tort language. Thus, the economic loss doctrine bars [those claims], and they will be dismissed."); *Abbott Labs v. Owens*, 2014 Del. Super. LEXIS 701, at *20-22 (Del. Super. Sept. 15, 2014) (dismissing fraud claim that "arose out of" and was "expressly governed by" the terms of the parties' contract because "the alleged fraudulent relates to the performance of the contract" and, thus, "the economic loss doctrine prohibits recovery in tort").

Here, each Defendant concedes that it and Omnicare were operating under a series of valid and enforceable contracts (*i.e.*, the PSA and PCA). (Counterclaims, ¶¶ 3, 12, 18, 28, 34, 43.) Each Defendant also concedes that, "[p]ursuant to" its contracts with Omnicare, it "agreed to remit payment to [Omnicare] in exchange for [the] delivery of pharmaceutical goods and services . . . ." (*Id.* at ¶¶ 3, 18, 34.) They expressly claim Omnicare's supposed fraud arose out of those contracts and payment arrangements. (*See id.* at ¶ 4 (asserting on behalf of the Southwest Facility that "demands for payment . . . were fraudulently determined"); *id.* at ¶ 8 (referring to "billing inaccuracies" directed to the Southwest Facility that were "intentional" and "deceptive[]"); *id.* at ¶¶ 5, 7 & 9 (stating on behalf of the Southwest Facility that Omnicare engaged in "inaccurate, deceptive, and unconscionable billing practices").)[5] Thus, it is indisputable that Defendants' Fraud Claims arise from the contracts at issue, can be redressed (if redress is at all required) by the parallel Contract Claims, and are barred by the economic loss doctrine. *See Templeton*, 868 F. Supp. 2d at

---

[5] The Tulsa and Midwest Facilities make identical assertions. (*See* Counterclaims, ¶¶ 19-20, 23-25, 35-36, 38-40.)

340-41 (dismissing fraud counterclaim because "defendant merely alleges fraudulent misrepresentation [that] pertains to the performance of the contract"); *see also, e.g.*, *Kuhn Constr.*, 844 F. Supp. 2d at 529; *Hentz*, 2008 U.S. Dist. LEXIS 76821, at *20-21; *Brasby*, 2007 Del. Super. LEXIS 73, at *22-23.

Defendants cannot salvage their claims by pointing to the adjectives that litter their pleading (*e.g.*, "deceptive" and "fraudulent"). Breach of contract claims cannot be "bootstrapped" into fraud claims by adding such words. *See Pinkert v. John J. Olivieri, P.A.*, 2001 U.S. Dist. LEXIS 8133, *16 (D. Del. 2001). Nor can Defendants argue in good faith that their fraud claims arise from some obligation independent of the parties' contracts, such that the economic loss would not apply. In *Pinkert*, the alleged "fraud" related solely to supposed inaccuracies in invoices submitted pursuant to underlying contracts. *See* 2001 U.S. Dist. LEXIS 8133, at *16-17. For that reason, in *Pinkert*, this Court concluded the plaintiff's allegations arose "solely from the [other party's] performance of [its] contractual duties" and, therefore, were "insufficient to support a fraud claim." *Pinkert*, 2001 U.S. Dist. LEXIS 8133, at *17.

The same result is warranted here, for the same reasons. The Fraud Claims arise from Omnicare's performance of its contractual duties, including, specifically, the invoices it issued after providing pharmaceutical goods and services to each Defendant. (*See* Counterclaims, ¶¶ 3, 12-13, 18, 28-29, 34, 43-44.) Insofar as Defendants now take issues with those invoices, their rights and potential remedies are set (and, as discussed below, limited) by the contracts at issue. *See Pinkert*, 2001 U.S. Dist. LEXIS 8133, at *16-17; *see also, e.g.*, *Templeton*, 868 F. Supp. 2d at 340-41; *Brasby*, 2007 Del. Super. LEXIS 73, at *22-23. Accordingly, the economic loss doctrine bars the Fraud Claims, which should be dismissed with prejudice.

### C. Each Fraud Claim is also Barred by Delaware's Separate Damages Rule

Separate and apart from economic loss, Delaware courts recognize that a party "cannot obtain the same damages for both fraud and contract," and "[f]raud claims that duplicate contract claims, and seek essentially the same recovery, cannot survive." *Collab9*, 2019 Del. Super. 443, at *9 (recognizing "claim duplication" and application of the "economic loss doctrine" as separate bases for dismissal of fraud claim). Thus, where a party's "damages claims and calculations" for allegedly fraudulent acts and breaches of contract are "materially identical," the State's "separate damages" rule bars recovery, and dismissal is warranted. *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 Del. Super. LEXIS 1068, at *13-14 (Del. Super. Mar. 17, 2017); *see also Ashland LLC v. Samuel J. Heyman 1981 Continuing Trust*, 2018 Del. Super. LEXIS 267, at *35-37 (Del. Super. June 21, 2018) (recognizing that "[f]ailure to plead separate damages is an independent ground for dismissal," and dismissing fraud claim on that basis); *Ridley v. Bayhealth Med. Ctr., Inc.*, 2018 Del. Super. LEXIS 138, at *11-12 (Del. Super. Mar. 20, 2018) (same); *Yu v. GSM Nation, LLC*, 2018 Del. Super. LEXIS 382, at *37-38 (Del. Super. Apr. 24, 2018) (same).

Here, each Defendant seeks identical damages in both its Fraud Claim and Contract Claim. (*See generally* Counterclaims, (establishing that each Defendant seeks the same damages in both tort and contract, to the penny).) Because Defendants seek the same recovery for both fraud and breach of contract, their Fraud Claims should be dismissed with prejudice.

### D. In Any Event, the Fraud Claims were not Pleaded with the Particularity and Rigor Required by Federal Rule of Civil Procedure 9(b)

Rule 9(b), which applies to allegations of fraud, has "sharper teeth than Rule 8." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 272 (3d Cir. 2016). "Given that allegations of fraud are particularly injurious to business and professional reputations" the 9(b) heightened pleading standard for a fraud claim "is further heightened" when

8

the fraud claim is against a corporation. *Export-Import Bank of Korea v. ASI Corp.*, 2017 U.S. LEXIS 223381, at *11 (C.D. Cal. Jan. 31, 2017). A fraud claim against a corporation "may withstand a Rule 9(b) challenge only if it states the manner in which [the alleged misrepresentations] are false, and the facts support an inference of fraud . . . .'" *Id.* at *11-12 (citation and quotation marks omitted).

Thus, pursuant to Rule 9(b), a party asserting fraud claims "must state with particularity the circumstances constituting fraud," FED. R. CIV. P. 9(b)—meaning "'the who, what, when, where, and how: the first paragraph to any newspaper story.'" *Liafail, Inc. v. Learning 2000*, 2002 U.S. Dist. LEXIS 22620, at *12 (D. Del. Nov. 25, 2002) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)); *see also United States ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016); *Gerbitz v. ING Bank*, 967 F. Supp. 2d 1072, 1078 (D. Del. 2013) (Stark, J.). Where a party fails to plead such facts, dismissal is warranted. *See Liafail*, 2002 U.S. Dist. LEXIS 22620, at *12; *see also, e.g.*, *REI Holdings, LLC v. LienClear – 0001, LLC*, 2019 U.S. Dist. LEXIS 130285, at *15-17 (D. Del. Aug. 5, 2019).

Where, as here, a plaintiff merely states that a defendant routinely engaged in fraudulent billing practices (*e.g.*, over-billing), and does so without referring to specific invoices, 9(b) is not satisfied and dismissal is warranted. *See Great Am. Ins. Co. v. Linderman*, 116 F. Supp. 3d 1183, 1194 (D. Or. July 15, 2015) (dismissing fraud claim because the complaint failed to state the "dates and contents of particular invoices" or "specify specific false statements in specific invoices"); *see also State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, 2016 U.S. Dist. LEXIS 18805, at *8-9 (E.D. Pa. Feb. 17, 2016) (dismissing fraud claim based on records of services not provided or not necessary, because plaintiff did not "indicate[] which claims were not provided and which were not necessary"). The heightened standard is also not satisfied when the plaintiff fails to identify

9

the "particular actor who made the allegedly fraudulent allegations." *Stavropolskiy*, 2016 U.S. Dist. LEXIS 18805, at *8 (holding plaintiff failed to satisfy 9(b) when the complaint "generally refers to 'Defendants' issuing bills, invoices, and records that are alleged to be fraudulent").

Here, Defendants have failed to plead fraud with the required particularity. They claim invoices were "fraudulently determined" but provide no detail about who at Omnicare participated in the supposed fraud or what about the invoices was "fraudulent" (as contrasted with, for example, simply erroneous). Nor do they state with particularity when the supposedly fraudulent invoices were either transmitted or received.[6] Because Defendants have not pleaded such facts, if the Fraud Claims are not dismissed with prejudice—and for the reasons stated above, they should be so dismissed—Defendants should be required to re-plead their claims to include references to specific people, specific dates, specific invoices, specific line items in those invoices, and any other information reasonably necessary to put Omnicare on notice of the specific claims of fraud that Defendants have put at issue.

### E. Defendants have Failed to Plead Contract Claims Upon Which Relief May be Granted

Defendants fail to plead facts necessary to support the most critical element of any breach of contract claim: breach. Thus, as detailed below, the Contract Claims should be dismissed.

---

[6] Plaintiffs' allegations of fraudulent billing "in the period between August 2017 and April 2018" amounts to nothing at all. Rule 9(b) requires more than an unadorned assertion of "some kind of billing fraud" at "some point" in relation to "something" when the parties were engaged in an actual contractual relationship.

Further, reference to an eight-month timeframe does not meet the particularity requirement of Rule 9(b). "Although Rule 9(b) does not require that a specific date and time always be alleged as to each misrepresentation, several courts have held that simply outlining a four-month window during which all of the misrepresentations occurred . . . does not satisfy the pleading standard of rule 9(b)." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 372-373 (5th Cir. 2004) (citations and quotation marks omitted); *see also Doehla v. Wathne Ltd., Inc.*, 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. Aug. 3, 1999) (holding that an allegation that statements were made over the course of four-month period is insufficient under Rule 9(b)).

### 1. Defendants have not pleaded facts establishing that they preserved the right to pursue their Contract Claims

It is black letter law that parties to a contract can agree to discharge claims or disputes unless certain conditions are met. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 224, cmt. 7(e) (noting that parties may agree by contract "that the occurrence of an event, such as the failure of one of them to commence an action within a prescribed time, will extinguish a duty after performance has become due, along with any claim for breach"); RESTATEMENT (SECOND) OF CONTRACTS, § 230, cmt. a (noting that parties may "provide that an obligor's duty to . . . compensate [the oblige] for a breach will be extinguished if the obligee does not take some action . . . within a stated period of time"). That is precisely what happened here. In each of the contracts at issue, Defendants agreed that their invoice-related disputes would be either "waived" or "discharged" unless two conditions were satisfied—specifically, unless they:

> (1) provided written notice of their invoice dispute to Omnicare within 30 days of the relevant Invoice Date; and
>
> (2) pay the disputed invoice in full within 60 days of the Invoice Date.

(*See* Burton Decl., Ex. A, Redacted PSA, §§ 3.3(b), 3.4(a), 3.4(b).)[7]

Defendants have not pleaded any facts indicating they met those conditions. Resultantly, they have extinguished any invoice-related duties that might have been owed to them, "along with any claim for breach" that they otherwise might have held. *See Good v. Moyer*, 2012 Del. Super. LEXIS 453, *10-11 (Del. Super. Oct. 10, 2012) (holding that a party's failure to satisfy a condition "results in a forfeiture of that party's rights under the contract."); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 224, cmt. 7(e); *cf. Anthony Allega Cement Constr., Inc. v. Johnson Controls Fed. Sys./Versar, LLC*, 2019 U.S. Dist. LEXIS 69371, at *15-16 (D. Del. Apr. 24, 2019)

---

[7] (*See also* Burton Decl., Ex. B, Redacted PCA, §§ 3.3(b), 3.4(a), 3.4(b).)

(recognizing generally that failure to plead satisfaction of conditions could result in dismissal of claim). Resultantly, Defendants have no right to pursue their Contract Claims, and those claims should be dismissed.[8]

### 2. The Contract claims also fail because Defendants neither refer nor allude to any specific contractual term that Omnicare supposedly failed to honor

The Supreme Court of the United States has cautioned litigants that a pleading that "tenders naked assertions devoid of further factual enhancement" will not meet the pleading standard imposed by Rule 8(a). *Iqbal*, 556 U.S. at 678 (citation, quotation marks, and alterations omitted). That rule "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when [its maker] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation, quotation marks, and alterations omitted). "***Where a complaint pleads facts that are merely consistent with [the adverse party's] liability, it stops short of the line between possibility and plausibility to entitlement to relief.***" *Id.* (emphasis added) (citation, quotation marks, and alterations omitted).

Against this backdrop, Defendants' Contract Claims must be dismissed. Defendants seek an aggregate award of $117,246.08, but they have not pleaded facts to show that they are entitled to that sum. Instead, without quoting, paraphrasing, or otherwise referring to any term of its contracts with Omnicare, the Southwest Facility baldly asserts that Omnicare "failed to charge

---

[8] Omnicare is mindful of the possibility that Defendants may amend to aver, generally or otherwise, that all conditions precedent to recovery have been satisfied. *See, e.g.*, *Anthony Allega Cement Constr.*, 2019 U.S. Dist. LEXIS 69371, at *15-16. However, Defendants cannot allege in good faith that they satisfied each contractual provision that would have preserved the Contract Claims. After all, if Defendants had paid Omnicare's invoices in full (as required by § 3.4(b) of their contracts), then Omnicare would not have brought its own claims for non-payment.

pursuant to the contracted for terms" and "fail[ed] to adhere to the agreed upon contract terms." (Counterclaims, ¶¶ 14, 15.)[9] Those allegations are woefully insufficient because they fall far short of the line between possibility and plausibility. *See Iqbal*, 556 U.S. at 678. The failure to cite any contractual provision that Omnicare supposedly breached warrants dismissal. *See id.*; *see also US Ecology, Inc. v. Allstate Power Vac, Inc.*, 2018 Del. Ch. LEXIS 194, (Del. Ch. June 18, 2018) ("[G]iven the Complaint's failure to identify any provision in the Purchase Agreement obligating [Defendants] to reimburse [Plaintiff] for the Non-Covered Payments, Count I fails to state a claim for breach of contract.").

---

[9] In support of its Fraud Claim, the Southwest Facility alleges that Omnicare invoiced it $11,556.49 for "drugs that were returned unused." (Counterclaims, ¶ 6.) That allegation was incorporated into its Contract Claim by reference. (*Id.* at ¶ 10.) However, the Southwest Facility has not pleaded facts establishing that it was entitled to return unused drugs, let alone that it was due credits for such returns.

The Contract Claims asserted by the Tulsa and Midwest Facilities follow the same pattern, suffer from the same deficiencies, and deserve the same fate.

13

## V. CONCLUSION

For all of the reasons stated above, Defendants have failed to plead Counterclaims upon which relief can be granted. Accordingly, each of their Counterclaims should be dismissed, and Counterclaims I, III, and V—which sound in fraud—should be dismissed with prejudice.

Respectfully submitted,

**BALLARD SPAHR LLP**

Dated: November 15, 2019

*/s/ William J. Burton*
William Burton (No. 6243)
919 N. Market Street
Wilmington, DE 19801
Telephone: (302) 252-4465
E-mail: burtonw@ballardspahr.com

Justin Kerner, Esq. (admitted *pro hac vice*)
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
E-mail: kernerj@ballardspahr.com

*Counsel for Plaintiff,*
*Langsam Health Services, LLC*