```
1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4  LANGSAM HEALTH SERVICES, LLC,        :     CIVIL ACTION
                                        :
5            Plaintiff,                  :
   v                                    :
6                                       :
   GARDEN MANOR REHAB AND NURSING OF    :
7  SOUTHWEST, LLC d/b/a EMERALD CARE     :
   CENTER SOUTHWEST, LLC; GARDEN MANOR  :
8  REHAB AND NURSING OF TULSA, LLC d/b/a:
   EMERALD CARE CENTER TULSA; GARDEN    :
9  MANOR REHAB AND NURSING OF MIDWEST   :
   CITY, LLC d/b/a EMERALD CARE CENTER  :
10 MIDWEST CITY, LLC,                   :     NO. 19-1696-LPS
                                        :
11           Defendants.
                              - - -
12
                         Wilmington, Delaware
13                       Friday, April 17, 2020
                        Telephonic Motion Hearing
14
                              - - -
15
   BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge
16
   APPEARANCES:                   - - -
17

18           BALLARD SPAHR, LLP
             BY:  WILLIAM J. BURTON, ESQ.
19
                    and
20
             BALLARD SPAHR, LLP
21           BY:  JUSTIN EDWARD KERNER, ESQ.
             (Cherry Hill, New Jersey)
22
                    Counsel for Plaintiffs
23

24
                         Brian P. Gaffigan
25                       Official Court Reporter
```

```
 1    APPEARANCES:   (Continued)

 2
                    MARTIN DUANE HAVERLY, ATTORNEY AT LAW
 3                  BY:  MARTIN DUANE HAVERLY, ESQ.

 4                       and

 5                  THE LAW OFFICE OF JAMES TOBIA, LLC
                    BY:  JAMES TOBIA, ESQ.
 6
                         and
 7
                    NATHAN & KAMIONSKI, LLP
 8                  BY:  SHNEUR NATHAN, ESQ., and
                         MATHEW J. McCARTER, ESQ.
 9                       (Chicago, Illinois)

10                       Counsel for Defendants

11

12

13

14

15

16

17

18                            - oOo -

19                    P R O C E E D I N G S

20                  (REPORTER'S NOTE:  The following telephonic

21    hearing was held remotely, beginning at 10:00 a.m.)

22                  THE COURT:  Good morning, everyone.  This is

23    Judge Stark.  Who is there for the plaintiff, please?

24                  MR. BURTON:  Good morning, Your Honor.  This is

25    William Burton of Ballard Spahr on behalf of plaintiffs; and
```

```
1    with me today is Justin Kerner who has been admitted pro hac

2    and with the Court's permission will make the argument on

3    behalf of plaintiffs.

4                    THE COURT:  That's fine.

5                    MR. KERNER:  Good morning, Your Honor.

6                    THE COURT:  Good morning to both of you.

7                    And who is there for defendants, please?

8                    MR. HAVERLY:  Good morning Your Honor this is

9    Martin Haverly.  I'm the new legal counsel for all the

10   defendants in this case.  And Matthew McCarter, who Your

11   Honor I believe just admitted pro hac vice this morning,

12   will be making the argument for defendants.

13                   THE COURT:  Okay.

14                   MR. McCARTER:  Good morning.

15                   THE COURT:  Good morning to both of you as well.

16                   My court report are is on the line; and for the

17   record it is our case of Langsam Health Services LLC versus

18   Garden Manor rehab and Nursing of Southwest LLC et al, Civil

19   Action No. 19-1696-LPS.

20                   And this is the time that we set for argument

21   on the plaintiff's motion to dismiss the defendants'

22   counterclaim.  Because we're doing this on the phone please

23   do be sure to identify yourself before you speak.  Listen

24   for possible interruptions because I may be trying to ask

25   you a question.  Please keep us on mute if you are not the
```

1    one speaking.

2              Any questions about that before we get started,

3    Mr. Kerner?

4              MR. KERNER:  No, Your Honor.

5              THE COURT:  And Mr. McCarter, any questions?

6              MR. McCARTER:  None, judge.

7              THE COURT:  All right.  Mr. Kerner, you may

8    proceed.

9              MR. KERNER:  Thank you very much, Your Honor.

10             This is a straightforward case involving a

11   contract between sophisticated business entities.  On the

12   one hand Langsam Health Services which is a subsidiary of

13   Omnicare which is a subsidiary of the company best known

14   as CVS and, on the other hand, three related healthcare

15   facilities who purchased pharmaceutical goods and services

16   from Langsam.

17             We're here today because Omnicare, Langsam, has

18   moved to dismiss the defendants' counters claims three of

19   which sound in fraud and three of which sound in breech of

20   contract.

21             And what is most notable at this point is really

22   what is not in dispute.

23             Langsam, which I will refer to as "Omnicare" going

24   forward, has urged dismissal of the fraud counterclaims based

25   on application of the economic loss rule.

1                    That was well set forth in its opening brief

2       and defendants did not comment on or otherwise oppose that

3       argument.

4                    Omnicare also urged dismissal of the fraud

5       counterclaims based on Delaware's separate damages rule.

6       Again, defendants didn't respond to or oppose that request.

7                    And Omnicare urged dismissal of the breach of

8       contract counterclaim because defendants did not seek

9       satisfaction of either of the two contractual conditions

10      which were predicate to challenging any of Omnicare's

11      invoices.

12                   Again, this remains uncontested.  So for those

13      uncontested reasons, each of the counterclaims should be

14      dismissed and the fraud claim should be dismissed with

15      prejudice.

16                   In our reply brief we cited a number of cases

17      including *Flora v County of Luzerne* and *Wilson Sonsini v*

18      *Wells Fargo Advisors*, standing for the proposition that

19      where arguments were raise in support of the motion to

20      dismiss and stand uncontested they should be granted as

21      uncontested.

22                   That aside on the merits, the fraud

23      counterclaims fail as a matter of law and should be

24      dismissed with prejudice.

25                   There is no dispute here that the fraud claims

overlap entirely with the breach of contract claims and that

if there is any remedy at all available to defendants, the

arises through those breach of contract counterclaims.

Defendants have confirmed this point in their

complaint where they essentially raise the same allegations

in support of those claims and also in their opposition

briefing.

In their opposition, they say that the fraud

claims rest on allegations of failing to submit bills to

appropriate sources, improper billing, improper charging,

improper supply of medication, and the matter in which

invoices were submitted.  That's at page 3 of their

opposition.  The same examples are used as proof of the

alleged breach of contract at page 4.

Of course, all of these claims relate to the

manner in which Omnicare performed under the contracts at

issue.  The defendants haven't pointed to and simply can't

point to any action by Omnicare that is separate and

distinct from the contract.

For all those reasons, the law of contracts

provides a better and more specific remedy than tort law and

in this situation, economic loss doctrine compels dismissal

of the fraud claim.

Of course, the fraud counterclaims are also

barred by the separate damages rule because in fraud,

defendants seek the exact same damages that they seek in contract.  That's set forth in our papers and for that point we would rest on our papers.

Finally, with respect to the fraud claims, those claims have not been pleaded with a particularity or rigor demanded by Federal Rule of Civil Procedure 9(b).  There has been no showing of who at Omnicare did or failed to do something, what they did or failed to do, when they did or failed to do it or otherwise what happened.  There is merely an allegation that somebody maybe did something at some point in the nine month contractual relationship between these parties and that is simply not enough.

Even if these claims were not to be dismissed with prejudice, they would need to be dismissed based on the simple pleading failure.

Your Honor, the breach of contract counterclaims don't fair any better for two reasons.  As detailed in our briefing, the contracts at issue each contained two conditions that had to be met before defendants could challenge any invoice.  The defendants were required to pay their bills in full and on time and were also required to provide timely notice of any invoicing dispute.

Now, we anticipate the defendants, base on their fraud counterclaims will say that they could not have raised their invoicing disputes any earlier.

1          We'll set that aside for the moment.  The fact

2     remains again, an undisputed fact, that plaintiffs did not

3     pay their bills in full.  They haven't pleaded otherwise

4     and the failure to plead satisfaction of that condition

5     preceded to release compels dismissal here.  It should be

6     a dismissal with prejudice because repleading would be

7     futile.  If this were a traditional oral argument, Your

8     Honor, we would have brought copies of defendants' responses

9     to requests for admission which we're happy to attach to a

10    letter if you would like and submit after the argument.

11          In their responses to requests for admission,

12    defendants admitted that they did not pay their bills in

13    full.  That showed that repleading would be futile because

14    they can't plead in good faith that they satisfied these

15    critical conditions precedent.

16          Last but not least with respect to the merits

17    argument, defendants in support if their breach of contract

18    counterclaims haven't pointed to a single contractual

19    condition that Omnicare failed to fulfill.  They claim

20    breach of contract but they never point to any provision

21    that has been breached.  That is also fatal to their claim.

22          At this point, we're left with a series of

23    fraud counterclaims that fail as a matter of law and breach

24    of contract counterclaims that fail as a matter of fact and

25    simply can't be repleaded.  Insofar as defendants want to

1   raise new arguments today that they haven't raise in their

2   papers, they should not be permitted to.  It's well settled

3   you cannot raise arguments for the first time in oral

4   arguments.  Insofar as they want to complain about the terms

5   of the contract that they negotiated and executed, it's

6   well settled even the Third Circuit has held that the Court

7   cannot write a better contract than the ones the parties

8   made for themselves.  They remain bound by these contractual

9   provisions.

10          And we believe leave to amend should be denied

11   for all these reasons.

12          We know the defendants sought leave to amend

13   and only one sentence buried at the tail end of their brief

14   which of course is not a proper request to replead.

15          Defendants, we raise this argument in our

16   reply back in January and in the ensuing three months the

17   defendants have taken no steps to correct the defect in

18   their request.  They could have filed a properly noticed

19   motion.  They did not.  They could have given some

20   indication at some point of the facts that they might assert

21   if they were permitted leave to replead.  They did not.  And

22   that itself is a violation of Local Rule 15.1 which would

23   have required them, the party seeking leave to replead, to

24   provide a copy of their proposed pleading; but again, all

25   that is beside the fact because the fraud claims fail as a

1  matter of law.  The breach of contract claims fail as a

2  matter of fact and it would be futile to add any sort of new

3  fact to try to replead any of those claims.

4        So in conclusion, Your Honor, the defendants

5  have not pleaded any counterclaim upon which relief can be

6  granted.  It is our contention that the fraud counterclaim

7  should be dismissed with prejudice, that the breach of

8  contract counterclaim should be dismissed with the express

9  understanding that defendants haven't satisfied the

10  conditions necessary to challenge any of the invoices at

11  issue, and that defendants should be barred from raising any

12  new argument today which was not raised in their earlier

13  opposition filed in December of 2019.

14        Your Honor, that is all I have subject to just a

15  few minutes for rebuttal, if you would permit me leave.

16        THE COURT:  I will certainly give you a chance

17  for rebuttal; and I don't have any questions for you at this

18  point.

19        Let me turn over to defendants and Mr. McCarter.

20  Go ahead.

21        MR. McCARTER:  Good morning, Judge.  This is

22  Mathew McCarter for all the defendants.

23        By way of addressing plaintiff's arguments, I'm

24  going to start with the fraud allegation; and I think it's

25  really important here to distinguish the conduct that each

1    alleged counterclaim is focusing on.  And just by way of

2    background, allow me to lay out, we brought three claims for

3    fraud and then three claims for breach of contract.  Each of

4    those claims is for one of the three individual defendant

5    facilities.

6            The fraud claim results from the defendant --

7    the plaintiff's conduct, excuse me, in submitting bills that

8    contained fraudulent statements and overbilling based on the

9    negotiated terms of the contract attached in Schedule 3.1.

10   Schedule 3.1 outlines the prices allocated to different

11   medications and how those are to be determined.

12           Plaintiff, during the course of the business

13   relationship here, approximately eight months, submitted

14   hundreds of invoices on each time the invoice was submitted

15   to each facility and contained within those invoices were

16   fraudulent billing statements for things such as billing

17   for refill medication too early, duplicate medication or

18   providing -- or providing over-the-counter medication when

19   cheaper generic alternatives were available.

20           The fraud comes in this case from the submission

21   of those invoices to the defendants, submitted in such a

22   manner that it would be nearly impossible for plaintiff --

23   or defendants within 30 days to review all those bills to

24   determine the extent of the fraudulent billing nature and

25   then respond to plaintiff as such.

1          Defendants have tried to raise some billing

2    disputes with the plaintiff, but those disputes have been

3    languishing for months at a time, three or four months.

4          Now, with the breach of contract here comes

5    from the failure to bill and to provide pharmacy goods and

6    services to the defendants' facilities in accordance with

7    the contract.  So the billing disputes that breach the

8    contract are actually the failures to follow that schedule

9    3.1, while the fraud claim focuses on the submission of

10   those invoices.

11         Now, breach of contract claims here has been

12   properly pled to meet all of the elements and to provide

13   plaintiff notice of the nature of the claims.

14         While plaintiffs spends a lot of time discussing

15   various prerequisites that they believe need to be met,

16   defendants have provided plaintiff already in discovery

17   several e-mails evidencing their attempt to resolve some

18   these billing disputes but plaintiff seems to show no

19   indication to participate in those discussions to evaluate

20   what might be in this billing.

21         Instead, they continue their practice of

22   fraudulently submitting these invoices with various charges

23   that are simply improper here and the fraud damages that

24   plaintiff alludes to in his separation of -- separate

25   damages argument comes from the damages that the defendants

1  incurred in investigating the full nature of plaintiff's

2  fraudulent conduct.

3  　　　　By submitting so many invoices of such lengthy

4  pages to the defendants each and every month, it takes

5  several individuals of many man-hours to go through those

6  invoices to determine the extent of the fraudulent billing,

7  so the damages from the fraud claim are separate from the

8  damages in the breach of contract claim wherein the fraud

9  focuses on the investigation of the plaintiff's fraud and

10  the determination of the extent of it while the breach of

11  contract damages focus on the amount of the overbilling, the

12  amount of medication that was provided either too early or

13  duplication.

14  　　　　Now, the fraud claim has also been pled with

15  sufficient particularity at least at this point for the

16  pleading requirements to provide plaintiff more than

17  sufficient notice about the nature of the claims.

18  　　　　The speaker here is Omnicare, Your Honor, and it

19  is speaking by way of the invoices.

20  　　　　Now, the defendants are not in a position at

21  this point to determine what individual at Omnicare actually

22  submitted the invoices; and frankly it's their position that

23  they don't need to.  The invoices are statements of

24  Omnicare, of the defendant.

25  　　　　The statements were made every month in these

1    invoices and the invoices themselves constitute the

2    fraudulent behavior because they are clearly outside of any

3    negotiated terms for in the contract.

4              Furthermore, Judge, the fraud here comes in the

5    manner in which the invoices were submitted in hundreds of

6    pages each month which essentially were plaintiff's conduct

7    in trying to hide the extent and the truth of their billing

8    misconduct; and that is what constitutes the fraud damages:

9    the amount that had to be expended to investigate each and

10   every one of those invoices for each and every patient to

11   determine the extent of the plaintiff's conduct.

12             With that said, Judge, I'll just briefly to

13   touch on the economic loss doctrine.  The economic loss

14   doctrine is applicable where damages can't be fettered,

15   allocated under a theory of contract law; and simply that

16   is not here, Judge.  Because of the nature of the

17   defendants' industry and being a healthcare provider in the

18   small communities to elderly employees, the damages just

19   from a theory of contract law would not be sufficient to

20   make whole again the defendants for the damage and the

21   reputation in the community as well as the amount that has

22   been expended in investigating plaintiff's misconduct.

23             While a breach of contract would be sufficient

24   to provide an adequate remedy for the breaching nature of

25   the contract, i.e., the submission of the bills and the

1    amount that the bills are improper beyond what it was

2    negotiated for in the contract, the fraud claim provides

3    for damages that are beyond just severe economic loss that

4    is associated with the breach the contract claim.

5            And for that reason, Judge, in addition to

6    previous reasons for the other arguments raised by the

7    plaintiff's counsel, we believe that plaintiff's motion

8    should be denied in its entirety.

9            THE COURT:  All right.  Some questions for you,

10   Mr. McCarter.

11           I assume you can't dispute that you failed

12   entirely in your brief to address the economic loss and

13   separate damages argument.  Assuming you don't dispute that

14   sort of indisputable reality, isn't it far too late at this

15   oral argument for me to entertain your arguments on those

16   two defenses?

17           MR. McCARTER:  Judge, I obviously cannot

18   dispute that they were not included in the documents, in the

19   briefing for this particular motion, but I do think it is

20   worth keeping in mind that the separate damages are clear in

21   the complaint in focusing on the fraudulent conduct and then

22   the actual breaching conduct, and I think it is clear from

23   the complaint that the economic loss doctrine does not apply

24   because contract law alone does not provide for an adequate

25   remedy.

```
 1              THE COURT:  Well, put aside for the moment if
 2    that is clear, the way this process works is the other side
 3    in this case moved to dismiss, filed a brief, made a number
 4    of arguments, several of which independently would be
 5    dispositive, and you have an opportunity to write an
 6    answering brief not only to let the other side know what
 7    your arguments are but importantly to help the Court figure
 8    out where the disputes are and to research that and be
 9    prepared to resolve them.  And in this case, for whatever
10    reason, I'm happy to hear if there is a reason, two of the
11    arguably dispositive defenses to the fraud claim are not
12    even mentioned in your brief, and on reply, the plaintiff
13    cites a number of cases which I think very clearly stand for
14    the proposition that you have waived your chance to argue
15    against those defenses.
16              If I'm missing something on that, please help me
17    see it.
18              MR. McCARTER:  Judge, the arguments were
19    specifically laid out in the briefing, but I do believe that
20    it is clear just from the face of the pleadings themselves
21    that the arguments do not lack merit; and at this time,
22    that's the position that the defendants will take on the two
23    arguments raised by plaintiff's counsel.
24              THE COURT:  All right.  On your breach of
25    contract claim, I'm unclear on what your position is with
```

1    respect to these conditions precedent.  To the extent I'm

2    even entertaining the idea of you having a chance to

3    replead, do you agree that part of your repleading would

4    need to be to allege that you did in fact satisfy the two

5    conditions precedent in order to be able to state a claim

6    for breach of contract?

7              MR. McCARTER:  Yes.  And I believe we can't --

8    excuse me one moment.

9              (Pause.)

10             Pardon me.  And I believe if given the

11   opportunity to replead, we can't satisfy that.

12             Defendants' representative in this particular

13   business dispute did communicate with plaintiff regarding

14   some billing disputes that they had, and those complaints

15   fell on deaf ears.

16             So if the Court does grant an opportunity to

17   replead, we do plan on filing a supplemental pleading that

18   does detail those conditions precedent have been met and, in

19   fact, it was plaintiff's breaching conduct even prior to

20   that that it devolved this relationship.

21             THE COURT:  To be clear, my understanding is

22   that there is two conditions precedent:  one that provided

23   written notice of the invoice dispute to Omnicare within

24   30 days of the relevant invoice date and, second, that you

25   actually paid the disputed invoice in full within 60 days of

1    the invoice date.

2            You're content that you can in good faith plead

3    that those two conditions precedent were satisfied for all

4    of the claims that you wish to state a breach of contract

5    claim for; is that correct?

6            MR. McCARTER:  That's correct, Judge.  Payments

7    were to be disputed within 30 days.  The facilities shall

8    remit payment within 60 days and although for each

9    individual months that my client has a dispute for the

10   bills, there has not been that for each individual month,

11   we do possess enough facts to plead that early in this

12   business relationship when my client started to notice

13   billing irregularities.  They did attempt to bring these

14   to the plaintiff's attention and from my understanding did

15   submit some payment in satisfaction of those invoices.

16           If given the opportunity to replead, we do plan

17   to include those, Judge.  Does that answer your question?

18           THE COURT:  It does, yes.

19           Okay.  I guess no other questions at this

20   point for you, Mr. McCarter.  Did you have anything else you

21   wanted to add before I turn back to Mr. Kerner?

22           MR. McCARTER:  Just, Judge, if given an

23   opportunity to replead, we do plan to replead both the

24   breach of contract and the fraud counterclaim.  Both of them

25   are sufficiently based in fact and are distinct enough to

1   warrant their own individual claims for each of the

2   individual facilities; and with that, the plaintiff -- or

3   defendant has nothing further.

4           Thank you for your time.

5           THE COURT:  Thank you.  Mr. Kerner, back to you.

6           MR. KERNER:  Your Honor, earlier I alluded to

7   the defendants' responses to requests for admission.  I'm

8   reading now from the request for admission.  This is No. 18.

9           "The Southwest facility did not remit

10  payment" -- this is our request, to be clear.

11          "The Southwest facility did not remit payment in

12  full within 60 days of receipt of each invoice he received

13  from Omnicare, within 60 days of the date of such invoice

14  pursuant to the payment terms."

15          The response was, after its objection:

16          "The defendant admits that it did not remit

17  payment in full for each invoice received but denies that

18  those invoices were proper under the contracts at issue."

19          I just heard my colleague say that some payment

20  was made but the fact remains with respect to the breach of

21  contract counterclaim that payment in full was not made.  It

22  has admitted that payment in full was not made.

23          And what I just read of the Southwest facility's

24  submission, that we have identical submissions from the

25  Tulsa facility and the Midwest facility.

1           The fraud claims fail under the Economic Loss

2   and Separate Statement of Damages Doctrine.

3           As Your Honor alluded in questioning, these

4   arguments that we're hearing today we're hearing for the

5   first time, and it is well settled that we can't hear new

6   arguments at oral argument.

7           But even if we set that aside, my colleague

8   stated that the fraud claims stand on fraudulent statements

9   and overbilling and how pricing was set.  He has, in

10  essence, admitted that the fraud claims arise out of the

11  parties obligations in contract.  So a breach of contract

12  claim, if one existed, would provide the best and most

13  adequate remedy at law.

14          The fraud claims fail, the breach of contract

15  claims fail, and it would be absolutely futile to replead

16  any of these claims.

17          Unless Your Honor has any questions, I don't

18  have anything left to add.

19          THE COURT:  Okay.  Just one, I guess.

20          I think I'm seeing a distinction between the

21  ability to replead on the fraud and the breach of contract.

22          On the breach of contract, of course, the

23  RFAs, the response to requests for submission would not be

24  considered on a motion to dismiss or at least maybe wouldn't

25  be.

1          What I want to say is counsel, of course, has an

2     obligation under Federal Rule of Civil Procedure 11 to make

3     sure that anything they allege for a specific counterclaim

4     is supported by a good faith investigation, belief in the

5     factual truth, and, you know, the legal plausibility of the

6     claim.

7          I'm thinking of giving them a chance to

8     attempt to state a breach of contract counterclaim with some

9     specificity that you correctly ask for and seeing if they

10    think, notwithstanding their response to the requests for

11    admission and anything else they may know, whether they can,

12    consistent with Rule 11, try to state a claim.

13          It sounds like you're asking me to say, right

14    now, it's futile.

15          What, if anything, do you see as improper about

16    what I'm obviously contemplating and giving them a chance

17    and seeing if they think they can, in good faith, plead

18    again the breach of contract?

19          MR. KERNER:  Your Honor, I clerked for many

20    years and learned in that time it's generally in my best

21    interest not to suggest to the judge that the proposed

22    actions are improper.  So maybe I can answer that question

23    in another way.

24          With respect to the breach of contract claim,

25    they have not put a true request for leave before the Court.

1    If plaintiff believes -- excuse me.  If defendants believe

2    that they can replead in some manner, I think their claims

3    today should be dismissed, and then if they want to replead,

4    I think they should have to file a motion along with a

5    proposed pleading to show that their proposed pleading

6    somehow meets the new standard.

7              Otherwise, I think it is kicking the can down

8    the road to another motion to dismiss.  And I mindful of

9    the parties' time and the Court's time and the fact that

10   resolution will help the parties as they continue to march

11   towards settlement with the Magistrate Judge.

12             THE COURT:  Okay.  Thank you for that.

13             Mr. McCarter, anything you want to add?

14             MR. McCARTER:  I just want to make the Court

15   aware that as currently scheduled, I know plaintiff's

16   counsel discussed a meeting with the Magistrate Judge.  That

17   is currently set for later this month at April 27th, but

18   other than that, defendants have nothing further to add.

19             THE COURT:  Okay.  Thank you very much.  Thank

20   you for the argument.

21             I'm going to give you my ruling on the motion.

22   And even though I know it has gotten a little confusing,

23   when I say plaintiff, I mean "Langsam" the plaintiff who

24   brought the case.  And when I say defendant, I mean the

25   "Garden Manor" defendants even though we're talking about

1    the defendants' counterclaim so conceptually the defendants

2    are the plaintiff.

3            But, nonetheless, in hopes of not confusing you,

4    what I have in front of me is plaintiff's motion to dismiss

5    the defendants' counterclaims.

6            The plaintiff's motion is granted.  It is granted

7    with prejudice with respect to the fraud counterclaim, that

8    is, Counts 1, 3 and 5, and granted without prejudice with

9    respect to the contract counterclaim, that is, Counts 2, 4,

10   and 6.

11           The "without prejudice" means that I'm going to

12   give the defendants one last opportunity, and it's going to

13   have to happen by three weeks from today, which I believe is

14   May 8th, to file a motion for leave to amend which will be

15   handled through my letter briefing process.  You can find

16   that outlined on my website.  But the plaintiff -- I'm

17   sorry, the defendant, if they choose to go down this road

18   and attempt to file an amended complaint, amended

19   counterclaim on breach of contract, they're going to have

20   to provide, consistent with our local rules, that amended

21   pleading and a blackline so we can all see the changes that

22   have been made to the pleading that I'm dismissing today,

23   and they need to file a motion for leave to do all that

24   accompanied by a three-page letter brief, the plaintiff will

25   then have a chance to file up to a five-page letter brief

1    response, and then the defendants have a chance to file it a

2    two page letter brief reply.

3              And after all that, if I need to talk to you

4    I'll get you on the phone, but I will do whatever I need to

5    do to make a decision on whether those amended counterclaims

6    actually come into the case.

7              So that's the result.

8              Let me just quickly tell you how I got there.  I

9    don't think the legal standards are disputed but let me just

10   touch on them briefly.

11             The motion arises under Rule 12(b)(6) of the

12   Federal Rules of Civil Procedure.  I think we all know what

13   the motion to dismiss standard is.  Basically, to survive

14   a motion to dismiss, the counterclaims have to contain

15   sufficient factual matter that, if accepted as true, would

16   state a claim to relief that is plausible on its face.

17             Half of the proposed -- or half of the

18   counterclaim in the operative pleading attempts to plead

19   fraud so that implicates Federal Rule of Civil Procedure

20   9(b) which imposes a heightened pleading standard for fraud

21   claims.  That is set out and you can find it in cases such

22   as *Rockefeller Center Properties Security Litigation vs.*

23   *Rockefeller*, 311 F.3d 198, a Third Circuit decision in 2002,

24   where the Third Circuit explained, as I think we all know:

25   "Independent of the standard applicable to Rule 12(b)(6),

Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud."

And Rule 9(b) itself states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Also applicable here, and fatally for defendants purposes unaddressed in defendants' brief, are two specific defenses to fraud.  One being the economic loss doctrine which has been described by the Delaware Superior Court, for instance, in a case called *Brasby vs. Morris*, 2007 Del. Superior Court, LEXIS 73, a decision of March 29, 2007. "The economic loss rule is a court adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injuries alleged."

And also another independent and equally unaddressed defense in this case, in a timely manner at least, the Separate Damages Rule which the Delaware Superior Court describes in the *Collab9 LLC vs. En Pointe Technology Sales*, *LLC* decision, 2019 Delaware Superior Court, LEXIS 443, a September 17, 2019 decision.  "Fraud claims that duplicate contract claims and seek essentially the same recovery cannot survive."

With that background, applying that law here leads to the decision that I've already announced. Importantly and unfortunately, defendants in their brief

failed even to address the economic loss doctrine and

the separate damages rule which were clearly set out in

plaintiff's opening brief as among the independent and

adequate bases for seeking dismissal of the fraud

counterclaims.

Having, for whatever reason, waived the

opportunity to be heard in their brief in response to these

arguments, the effort today belatedly during oral argument

to address those defenses is far too late, as is confirmed

by the many cases to that effect that are out there, some of

which are cited in the plaintiff's reply brief.

It's not fair to the moving party, it's not fair

to the Court to only at the last minute try to throw up new

argument on which the defendants, for whatever reason,

waived their opportunity to put before the Court and to

give the plaintiff a chance to answer when they should have

during the brief.

That said, even if I were to reach the merits,

it seems like this is a classic case where the economic loss

doctrine would apply.  The efforts today to say that somehow

reputation and costs of investigating fraud are somehow not

covered by the contract, none of that is clear from the

pleadings and does not at least on initial view sound like

it would be meritorious, but in any event, this is part of

the problem of waiting until an oral argument which I didn't

1    even have to grant in which I think the parties had told me

2    they were comfortable with me canceling, which is part of

3    the problem or illustrative of the problem of waiting until

4    this last moment to even respond to these arguments.

5            So the fraud claims are out.  I also agree with

6    the plaintiff that they're not sufficiently plead under the

7    standards of Rule 9(b).  The who, what, where, and when are

8    not pled with sufficient particularity.

9            So for all those reasons, the fraud is out.

10   It would be futile to try to replead; and it would also,

11   in an exercise of my discretion, be entirely unfair to

12   the plaintiff for defendants to be able to get another

13   opportunity when again they so clearly waived their

14   opportunity to be heard in response to what appear to be

15   meritorious defenses.

16           In terms of the breach the contract

17   counterclaims, that dismissal as I said is without prejudice

18   to the defendants have been one last opportunity in the next

19   three weeks to attempt to replead by filing a motion for

20   leave to file an amended pleading.

21           The claims as pled now are deficient.  They

22   don't identify the provision of the contract that supposedly

23   was breached by the plaintiff.  They don't contend that the

24   defendant met its obligations under the contract, including

25   the two specific conditions precedent that I discussed with

1    counsel during the argument.

2              I find persuasive the analogy to the case of

3    *Raul vs. Rynd*, a decision of this court in 2013 can be found

4    at 929 F.Supp. 333.  The plaintiff cited this case and it

5    is one in which the Court dismissed a breach of contract

6    claim that consisted only of generally allegations that the

7    defendant breached its consider to render competent and

8    sound advice and services and failed to identify a

9    contractual provision that was breached.  I think the

10   situation here is entirely analogous.

11             Now, it may well be that it is futile for

12   defendants to try to replead their breach of contract

13   counterclaim.  Certainly, there is some strong indicia of

14   that in what has been explained to me about the responses to

15   the request for admission.  I don't have those in front of

16   me.  They're not part of the record on this motion.

17             Defense counsel, like all attorneys, I know are

18   cognizant of their ethical obligations, including the Rule

19   11 obligations I already mentioned.  I also heard I think

20   during the argument a contention from defendants that

21   perhaps given the volume of bills or invoices that are sent

22   from plaintiff to defendants that maybe it's impossible for

23   the defendants to comply with their conditions precedent.

24   All of that may mean in fact when counsel goes back and

25   carefully evaluates what the evidence is and does whatever

1   investigation is required consistent with Rule 11, that they

2   can't in fact replead in good faith the breach of contract

3   claims.

4          But I can't say that today or rule that today as

5   a matter of law based on my record.  So, again, I'm giving

6   the defendants this one last opportunity consistent with the

7   procedure that I outlined at the beginning of my ruling to

8   try to replead the breach of contract counterclaim.

9          So that is my ruling.  I will get a short oral

10  order out that simply says that we have resolved the motion

11  in this way.

12         Any questions about any of that or anything else

13  we should talk about while we're together, Mr. Kerner?

14         MR. KERNER:  No, Your Honor.

15         THE COURT:  And Mr. McCarter?

16         MR. McCARTER:  Judge, I do just have one

17  logistical thing regarding the opportunity by May 8th to

18  submit a letter regarding repleading.

19         As Your Honor is probably aware, my clients

20  are involved in the healthcare industry and specifically

21  operating homes that have many elderly patients in them and

22  as you can imagine, given the events of the recent month or

23  so, we're dealing with corona virus, they're have been under

24  siege for lack of a better term.

25         If I could just request the Court for a

1       four-week, a four-week time frame in which to file, to

2       communicate with my clients to get the necessary information

3       to file a letter formally requesting leave to amend the

4       pleadings.  Perhaps May 15th or the 22nd?  Just to alleviate

5       some of the pressure that I'm going to put on to my clients

6       to get this necessary information is that they're already

7       dealing with the corona virus situation at these various

8       facilities.

9                   THE COURT:  Understood.

10                  Mr. Kerner, do you object to that?

11                  MR. KERNER:  We wouldn't object to an extension

12      to 5/15, Your Honor.

13                  THE COURT:  Okay.  And how about to the 22nd?

14      Would you object to that?

15                  MR. KERNER:  My only concern, Your Honor, is as

16      we've stated, we have these responses to request for admission

17      and we also have the ongoing settlement discussions.  So if

18      we push out the letter motion and the response and the reply

19      five weeks, that process may not be concluded along with the

20      Court's decision for two to three months, and may hinder the

21      mediation.

22                  THE COURT:  Okay.  Well, I will give the

23      defendants until May 22nd to file their request for leave.

24      I do appreciate the challenges everyone is working under and

25      particularly those in the healthcare industry and I had not

1    sufficiently factored that in to my initial statement of the

2    deadline.  I have an interest in moving this case along just

3    like all cases and I'm quite familiar with it now and that

4    will dissipate as time goes on, but what Mr. McCarter asks

5    for is reasonable under those circumstances here.

6            The letter briefing process only takes a little

7    more than a week.  Mr. McCarter, it's important that you

8    follow that process, look at it.  It's set out on our

9    website.  So I don't want you to have to counter an argument

10   that you failed to follow the order or our procedures and

11   so anyway it will be a fairly efficient process once it

12   gets started and I understand the need for some time before

13   defendant can be sure that in good faith he can go ahead and

14   start this process.  So my order will say the motion is due

15   by May 22nd.

16           I will add, Mr. McCarter, if you and your client

17   decide in advance of May 22nd that you are not filing a

18   motion for leave, don't just sit on that.  Let the plaintiff

19   know that.  Understood, Mr. McCarter?

20           MR. McCARTER:  Understood, Your Honor.

21           THE COURT:  All right.  Mr. Kerner, anything

22   else?

23           MR. KERNER:  No, Your Honor.  Thanks very much

24   for the time this morning.

25           THE COURT:  Okay.  Thank you both; and everybody

1    be safe.   Good-bye.

2              (Telephone conference ends at 10:46 a.m.)

3

4         I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

5

6                         /s/ Brian P. Gaffigan
                          Official Court Reporter
7                          U.S. District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25